A91A2017. CARROLLTON CAR CENTER, INC. et al. v. CITIZENS & SOUTHERN NATIONAL BANK.
(414 SE2d 674)

BEASLEY, Judge.

Citizens & Southern National Bank sued Carrollton Car Center, Inc. and its two shareholder-officers (Isaacman and Lambert), who personally guaranteed a promissory note after acquiring a car dealership. Lambert was not served. Isaacman and Carrollton Car appeal the trial court's grant of the bank's motion for summary judgment.

On June 2, 1984, Charles Puckett, as president of Carrollton Car, executed a Single Payment Note and Security Agreement obtaining a line of credit from The Peoples Bank in the amount of $600,000 payable on demand and secured by motor vehicles to be purchased with the borrowed funds.

On October 1, 1987, Puckett transferred 49 percent of his ownership interest in Carrollton Car to Isaacman and Lambert. They each executed a guaranty of the note, and Puckett's remaining interest in the company was transferred to them the following year.

In 1990, C & S, successor of The Peoples Bank, sued on the promissory note and guaranties, alleging indebtedness of $66,515, plus interest and attorney fees.

Appellant-defendants contest summary judgment.

1. They argue that a time loan system note ledger maintained by the bank shows that they do not owe the bank any money, but rather that the bank owes them $30,460.76.

This ledger shows the charges, advances, and payments on the line of credit from June 8, 1987, until January 8, 1990, whereupon the bank ceased lending money to the dealership. This ledger shows a positive $30,460.76 balance. A bank officer explained by affidavit that

this ledger did not reflect a balance of $96,975.76 owing on the line of credit at the time the account was entered into the bank's computer system, and that this was explained to Isaacman when the ledger was given to him in March 1990. Subtracting the $30,460.76 from the $96,975.76 results in the $66,515 principal amount sought. There is no evidence to contradict this explanation.

2. Isaacman argues he and Lambert were discharged from liability on the guaranties in that, unbeknownst to them, the bank loaned money to the dealership in excess of the prices of the motor vehicles which were purchased, and the bank released its security interest in such vehicles prior to payment of the secured indebtedness, thereby resulting in the large deficiency for which the bank seeks to hold the defendants liable.

The only evidence to support this is a comment in a letter from the bank to the general manager of the dealership, which was later sent to Lambert and Isaacman, to the effect that it was unfortunate that values placed on the dealership's motor vehicles were overstated. The complained-of lending practices apparently facilitated a misappropriation of corporate funds by the general manager, who was fired. There is no evidence of any involvement in this scheme by any bank board member, officer, employee, or agent.

The following provisions in the instruments bar the guarantors from asserting defenses based on the release of collateral or an extension of credit in excess of the valuation of collateral: The note states, "WAIVER: Each maker . . . and guarantor . . . agrees that liability for the payment hereof shall not be affected or impaired by any release (in whole or in part) or change in the collateral, if any. . . ." The guaranties state, "The Lender may, from time to time, without notice to the undersigned . . . (e) release its security interest, if any, in the Collateral and permit any substitution or exchange for the Collateral or any part thereof, and (f) resort to the undersigned (or any of them) for payment of any of the Liabilities or performance of the Obligations, whether or not the Lender shall have resorted to any of the Collateral, or shall have proceeded against any other of the undersigned or any other party primarily or secondarily liable on any of the Liabilities or Obligations."

Such provisions operate as a waiver of a guarantor's impairment-of-collateral defenses under OCGA § 11-3-606 (1) (b). *Wilson v. Baxley State Bank*, 155 Ga. App. 507 (1) (271 SE2d 655) (1980).

The fact that Puckett was a director of the bank when these lending practices occurred does not change this result.

3. Isaacman also seeks to avoid liability by asserting that at the time he guaranteed the loan, a bank officer erroneously stated that Puckett had also guaranteed the loan.

The parol evidence rule bars evidence of an extrinsic contempo-

raneous oral representation that an unconditional written guaranty was conditioned on the existence of a guaranty by another party. OCGA § 24-6-1; *Area v. Cagle*, 148 Ga. App. 769 (2) (252 SE2d 655) (1979); *McGraw v. Trusco Leasing*, 137 Ga. App. 328 (223 SE2d 731) (1976). Moreover, there being no confidential relationship between a bank and its customer, a customer has no legal right to rely upon the bank's representations and must exercise due diligence in ascertaining the truth. *Citizens & Southern Nat. Bank, Augusta v. Arnold*, 240 Ga. 200 (240 SE2d 3) (1977). See *Shaw v. Cook County Fed. Savings &c. Assn.*, 139 Ga. App. 419 (228 SE2d 326) (1976).

The bank has established a prima facie right to recover on the note and guaranties, and defendants have failed to produce evidence of a legally sufficient defense. The trial court did not err in granting the bank's motion for summary judgment. *Area*, supra at 769 (3).

*Judgment affirmed. Carley, P. J., and Judge Arnold Shulman concur.*

DECIDED JANUARY 6, 1992.

*Hartley, Rowe & Fowler, G. Michael Hartley, Elizabeth A. Geoffroy*, for appellants.

*Prince & Diment, E. Carl Prince, Jr.*, for appellee.